(Hamilton County, Court of Common Pleas.)

CALVIN LUDLOW ET AL. v. EUGENE L. LEWIS, Auditor of Hamilton County,

BENJAMIN B. WHITEMAN ET AL. v. EUGENE L. LEWIS, Auditor of Hamilton County.

[Two Cases.]

(1).   Under the law creating the Board of Review of Cincinnati, that board has the powers and is to perform all the duties heretofore conferred upon or required of the annual board of equalization, and has all the powers and is governed by the rules, provisions and limitations prescribed for the annual county board of equalization.

(2).   Annual boards of equalization can act only upon specific parcels of real property, and only in cases of gross inequality, and after personal notice.

(3).   The jurisdiction of the board of review of Cincinnati in making additions to the valuation of property depends upon a finding of gross inequality, and from the nature of things this finding must first be made by the board of review itself, for each tribunal must determine its own jurisdiction.

(4).   Gross inequality is a relative term.   It has no fixed meaning, but varies with varying circumstances.   Small additions or small reductions of tax values may become necessary compared to other pieces of property, as well as to numerous other conditions which must be taken into consideration by the reviewing board.

(5).   Complaint or suggestion to the board of equalization is not a condition precedent to its action in changing the values for gross inequality.   It may take action on its own motion, or from its own knowledge.

(6.   The members of boards of equalization acting as such are not required to see the property or to enter into it or upon it.   They may form their opinion in such manner as seems to them advisable.

SPIEGEL, J.

Certain principles governing boards of equalization of taxation are established in our jurisprudence and must be considered by the courts in deter-

mining litigation involving questions of taxation.    These boards act judicially in equalizing, and their decision is conclusive and cannot be attacked collaterally unless their action or determination is impeached on the ground of fraud or because of a want of jurisdiction, and in the case of The Gerke Brewing Company v. John Hagerty, Auditor et al., decided by our common pleas court in October, 1894, the following further rules were laid down, vol. 1, Ohio Nisi Prius Reports, page 69:

"First.    The board must act as a board.    Second.    The reasons for making the addition must be set out in the journal.    Third.    The board must have evidence of some kind on which to base its conclusions."

Now what are the facts in the cases before me?   One hundred and twenty-five petitioners pray for a restraining order against the county auditor to enjoin him from placing an increased valuation against their real estate upon the tax list which was added to the decennial value of their realty by the annual board of review in the year 1892, one year after the decennial valuation.

Plaintiffs say that in the year 1892 the then board of equalization and assessment for the city of Cincinnati, known as the board of review, consisting of Richard Smith, J. M. Doherty, Louis Krohn, William Strunk, Henry Hemmelgarn and James L. Foley, proceeded to set aside the appraised decennial valuation of their real estate and to substitute a new and increased valuation of the same; that said board of review did this while they claimed to sit as an annual board of equalization for the city of Cincinnati, and it was nominally made by them for the reason of gross inequality.

The plaintiffs further say that there was no gross inequality of valuation then existing between said premises and other parcels of land in the neighborhood thereof, and that the reason so assigned by said board of review was simply a fraudulent pretext for said addition and was not made in good faith; and that said reason was

it a semblance of a legal addition of value to said premises, and for no other purpose whatsoever; and that said additions were not made to the value of single parcels of property, as to which they had claimed the inequality was gross; but under the preceding only stated for the purpose of giving text of this authority, which the law limited to single pieces of property, they wrongfully and illegally increased the value of large quantities of property in the same neighborhood, thereby wrongfully and greatly increasing the tax duplicate, to the burden of plaintiffs and other property holders.

Plaintiffs further say that placing these additional values upon the real property of plaintiffs is without authority of law, and is in violation of the constitution of Ohio, and especially in violation of article 2 section 26 of said constitution, which declares: "All laws of a general nature shall have a uniform operation throughout the state," and also in violation of article 12, section 2, which declares, "Laws shall be passed taxing by uniform rule all real and personal property."

To which the county solicitor, as counsel for the county auditor, Eugene L. Lewis, files an answer and denies that said board of review proceeded to set aside the appraised valuation of the premises of plaintiffs and substitute a new and increased valuation for the same, but that the said six persons constituting the board of review of the city of Cincinnati, and acting as the board of equalization for said city, increased the value of the property of the said plaintiffs by reason of the gross inequality of the value of the same as it existed on the tax duplicate; and they deny all and every other allegation not admitted.

The board of review complained of in these actions, and whose present successor is the board of supervisors, was created by the new charter for the city of Cincinnati, an act supplementary thereto and amendatory of title 12 of the Revised Statutes of Ohio, passed March 26, 1891 and to

be found in 88 Ohio Laws, page 222. The law was sustained as constitutional by our supreme court in the cases of the state of Ohio, ex rel. The Attorney-General v. Thomas W. Graydon et al., and the State of Ohio v. Richard Smith et al., and this question, therefore, cannot arise in these cases.

The law creating the board of review provided that it should have all the powers and perform all the duties heretofore conferred upon or required of the annual board of equalization, and this board the law provided should have all the powers and be governed by the rules, provisions and limitations prescribed for the annual county board of equalization.

Section 2804 provides the rules governing annual county boards. They are as follows:

"Said board shall have power to hear complaints and to equalize the valuation of all real and personal property, moneys and credits, and shall be governed by the rules prescribed for the government of decennial county boards for the equalization of real property; provided that said board shall not reduce the value of real property of the county below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures over the value of those destroyed, as returned by the several township assessors for the current year; provided, further, that except as to new structures and structures destroyed and lands and lots brought on to the tax list since the preceding decennial state board of equalization, the annual county board shall not increase or reduce the valuation of any real estate except in cases of gross inequality, and then only upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the question involved."

The powers granted to the decennial county board of equalization are contained in section 2814, and are as follows:

"The auditor shall lay before the board the returns made by the district assessors, with the additions which he shall have made thereto; and they shall then immediately proceed to equalize such valuation, so that each tract or lot shall be entered on the tax list at its true value, and for this purpose they shall observe the following rules:

"First. They shall raise the valuation of such tracts and lots of real property as, in their opinion, have been returned below their true value, to such price or sum as they may believe to be the true value thereof, agreeably to the rules prescribed by this title for the valuation thereof.

"Second. They shall reduce the valuation of such tracts and lots as, in their opinion, have been returned above their true value, as compared with the average valuation of the real property of such county, having due regard to their relative situation, quality of soil, improvement, natural and artificial advantages possessed by each tract or lot.

"Third. They shall not reduce the aggregate value of the real property of the county below the aggregate value thereof, as returned by the assessors, with the addition made thereto by the auditor, as hereinbefore required."

Certain questions arising in these cases may be disposed of immediately. The testimony does not disclose any actual fraud whatsoever on the part of the board of review, and unless their alleged want of jurisdiction could predicate constructive fraud, there is no cause of action found upon that ground. The question underlying these cases, therefore, resolves itself into the simple inquiry: Did the board of review have jurisdiction to do the acts complained of by the petitioners?

Counsels, both for the plaintiffs and defendant, have submitted elaborate briefs arguing numerous theoretical questions supposed to enter into the determination of these causes. I believe, however, that the only question underlying these cases is the one I have just stated.

It is admitted that the statute requiring notice to persons whose tax values have been increased, and a hearing before the board, has been complied with. There is then to be determined the question whether the board exceeded its jurisdiction in the suits before me, and three propositions will have to be met in this determination.

First. Must the board have acted only upon complaints filed?

Second. Could the board have acted if no gross inequality appeared?

Third. If not, does the testimony show that there was no gross inequality in the cases complained of?

As to the first proposition, that the board of review could only have acted upon complaint filed, the testimony shows that in the majority of cases before me complaints were filed. Nevertheless, the supreme court has determined this question in the case of Mary A. Britt v. Eugene L. Lewis, Lewis, Auditor, and Tilden B. French, Treasurer, decided in the July Term, 1898, by the circuit court in our county, wherein the rule is laid down that, "Complaint or suggestion to the board of equalization is not a condition precedent to its action in changing the values for gross inequality. It may take action on its own motion, or from its own knowledge." This case was affirmed by the supreme court without report, as will be seen by reference to 41 Weekly Law Bulletin, page 204.

The second question, I think, has also been determined by our supreme court, if not directly at least inferentially, in the case of Gaylord et al. v. Hubbard, Treasurer, 56 Ohio St., page 25, decided February 2, 1897. The supreme court declares unconstitutional an act creating an annual board of equalization for the city of Cleveland which gave to it all the powers provided by law for decennial county boards in equalizing the valuations returned by the district assessors, without the restriction that they may only increase or reduce the valuation of real estate in cases of gross inequality.

The court finds that this act con-

flicts with section 26, article 2, of the state constitution, which provides that all laws of a general nature shall have a uniform operation throughout the state, because other annual city boards in the state having the same duties to perform as the Cleveland board are restricted by reason of the gross inequality clause, which does not appear in the Cleveland act. The court says that no such power as has been conferred upon the Cleveland board has been conferred upon annual boards of equalization sitting in the other parts of the state, which can only act upon specific parcels of real property, and only in cases of gross inequality, and after personal notice.

Following the rule laid down in this case, to-wit; that annual boards of equalization can act only upon specific parcels of real property, and only in cases of gross inequality, and after personal notice, I find that the jurisdiction of the board of review in the additions made in the cases pending before me depended upon a finding of gross inequality, and from the nature of things this finding must first be made by the board of review itself, for each tribunal must determine its own jurisdiction. This, therefore, answers the second proposition in the negative.

Coming to the third proposition, therefore, underlying these cases the question arises, what does the evidence disclose as to this jurisdictional fact? The only testimony upon this subject introduced is that of members of the board themselves, their clerk, certain experts and the minutes of the board. The minutes in each of these cases recite that notice having been issued and served on the parties respectively interested in the several pieces of real estate next herein described, that the board would consider and act upon motions to add to the tax value thereof because of gross inequality, and the parties having been heard and the evidence considered upon motion duly adopted, it was voted to add to or reduce because of gross inequality of amounts set opposite each of the tax values of the different

pieces of property, the vote being taken in each case.

There was also introduced the field books of those experts employed by the board which, together with their testimony, showed that the board relied upon their examination in the determination whether gross inequality existed in the tax value of the parcels of real estate equalized by them, and in many cases acted in accordance with the reports of the experts.

In the case of Harmony Lodge No. 2 v. John Haggerty, noticed supra, it was determined that the members of boards of equalization acting as such are not required to see the property or to enter into it or upon it. They may form their opinion in such manner as seems to them advisable. The only requirement of the law is that the valuations, when fixed, shall represent the opinion of the board. And said minutes of the board, just quoted by me, show, without having been impeached, that the action of the board represented the opinion of the individual members of the board. This disposes of the question raised as to the work of the experts, the board having taken a separate vote by roll call upon each separate parcel of real estate.

I come now to the question whether the evidence in these cases shows the jurisdictional fact necessary for action on the part of the board to-wit: gross inequality. The minutes show that the board voted on each piece of land where tax value was either increased or decreased with a finding by the board that there was gross inequality in each case. The minutes further show that the board acted as a board, and that in each case it heard evidence upon which it based its finding.

The plaintiffs have offered no testimony in the cases before me attacking this record, but rely entirely upon the facts that the changes made by the annual board in the valuations of the decennial assessors of the year previous were so numerous and the increase or reduction so slight, as to indicate that they could not have been guided by any gross inequality, but

simply reviewed the work of the decennial assessors as an annual board, and changed it to suit their own ideas of the fitness of things.

If the testimony bears out this claim, then the prayer of the petitioners must be granted, for the board of review sitting as an annual board possessed no such power. It could only act on specific parcels of real estate, and only in case of gross inequality and after personal notice and upon evidence heard. But does the record of the board of review, the only evidence on this point introduced by the plaintiffs, bear out this contention? The burden is upon them to prove their case by a preponderance of the evidence. The minutes show that the board made changes in four thousand pieces of real estate out of a total of sixty-five thousand entries by the decennial assessors. It had eleven hundred complaints before it. Now, in order to make a reduction in a tax value of one parcel, the amount so reduced had to be placed upon another piece or pieces of real estate to conform to the law which provides, "that said board shall not reduce the value of the real property below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures over the value of those destroyed." And the evidence shows that in many instances, if not in all, the reduction so made in the tax value of one parcel was placed on numerous other pieces of property in order to equalize correctly; thus sometimes necessitating changes upon entire streets.

This fact is relied upon by plaintiffs to prove that there was a systematic equalization instead of a correction of the value of isolated pieces of real estate. The amounts added or deducted in the greater number of cases being also small, counsel for plaintiffs contend further that these two circumstances together furnish the necessary preponderance of evidence to show that there was no gross inequality authorizing the board to act.

In the case of L. C. Black et al. v. John Haggerty et al., recently decided by our supreme court, to-wit: June 20, 1899, the court sustained the action of the local board of equalization in the setting aside a reduction made by the state auditor, governor and attorney general, sitting as a state board of review, and Judge Shauck expressly states it to be the policy of the legislature to require the valuation to be determined by officers having some knowledge upon the subject and facilities for acquiring full knowledge concerning same.

The minutes of the board of review unattacked show that it examined each case separately and heard evidence concerning it, and that before placing an increase upon other pieces of property to equalize the reduction made, it again heard evidence regarding each of these particular pieces of property.

Now, gross inequality is a relative term. It has no fixed meaning, but varies with varying circumstances. Small additions or small reductions of tax values may become necessary by reason of gross inequality when compared to other pieces of property, as well as to numerous other conditions which must be taken into consideration by the reviewing boards.

It is not the policy of the courts, nor is it allowed by the principles of law underlying tax revisions, to set aside the judgments of tribunals created for the very purpose of decreasing tax inequalities, unless on the ground of fraud either actual or constructive, amounting to an abuse or misuse of power upon the part of these boards.

In the cases pending before me, jurisdiction had been obtained by the board of review, according to the minutes, and in order to set aside this finding of the board, proof must be clear that this finding is fraudulent. This proof must be clear in each one of the one hundred and twenty-five cases before me, before a court will set aside the judgment of an administrative tribunal having judicial functions to perform.

I think it must be plain that plain-

tiffs have failed to produce this proof. Even if the court's judgment should differ from that of the board of review in some of these cases, this is not enough to set aside their action. Their judgment, legally exercised, after examination of the property and the hearing of witnesses in each particular case, is to be preferred to that of a single judge without any other evidence before him in any of these cases than the record of the board to determine whether there was any gross inequality or not. The simple fact that the amount added or reduced was small is not sufficient, without other evidence before me, to warrant me in finding that the board has no jurisdiction to act because there was no gross inequality. The testimony shows, from the record of the board, that it had other testimony, before it decided the fact of gross inequality upon which to determine its jurisdiction, which facts have not been disputed, nor other facts submitted in evidence to controvert their judgment. Under these circumstances I must sustain the action of the board of review, and an order may be entered refusing the prayer of the plaintiffs and dismissing the petitions.

J. J. Glidden & J. R. Von Seggern, for Plaintiffs.

Rendigs, Dinsmore & Foraker, County Solicitors, for Defendants.